# Schotte *v.* Meredith.

*Evidence—Parol evidence—Omission of part of contract in written instrument—Mistake.*

A written agreement may be reformed by showing a mistake by the scrivener in failing to insert therein the whole contract of the parties, but the evidence so to reform the instrument must be clear, precise and indubitable.

Where one brother agrees in writing to sell his interest in his father's estate clear of all incumbrances to another brother, the vendee agreeing to assume all debts due by the estate for which the vendor is liable, the testimony of the scrivener who drew the agreement is admissible to prove that it was the intention of the parties that the vendee should assume the payment of a mortgage upon the real estate, and that reference to the mortgage had been omitted in the written agreement by mistake. In such a case, however, the court may properly charge that the evidence to reform the written instrument must be clear, precise and indubitable, and if the court does so charge, and the verdict goes against the vendor, he has no grounds for complaint.

Argued Oct. 9, 1900. Appeal, No. 136, Oct. T., 1900, by plaintiff, from judgment of C. P. Armstrong Co., June T., 1896, No. 160, on verdict for defendant, in case of Karl B. Schotte, administrator c. t. a. of Charles T. Schotte, deceased, v. William B. Meredith, administrator of Frederick G. Schotte, deceased. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit upon an agreement to sell land.   Before MIL-
LER, P. J., of the 35th judicial district, specially presiding.

The facts appear from the report of the case in 192 Pa. 159,
and by the opinion of the Supreme Court.

The court charged in part as follows :

On and prior to March 3, 1881, C. B. Schotte was the owner
of 210 acres of land situate in Armstrong county.   On that
day he executed a mortgage, in favor of John Gilpin, and se-
cured it on this land for $1,425.54.   On March 26, 1884, C. B.
Schotte died, owning the 210 acres of land as aforesaid, and at
the time of his death the mortgage of $1,425.54 was unpaid.
C. B. Schotte died intestate and leaving to survive him three
sons, Gustavus Adolphus Schotte, F. G. Schotte and Charles
T. Schotte.   On February 23, 1886, Charles T. Schotte, by an
article of agreement of that date, sold to Frederick G. Schotte
all of his interest in the 210 acres of land.

The article of agreement was drawn up by John W. Rohrer
who testifies that he was acting in so doing as the attorney for
F. G. Schotte.   If there was no dispute as to the contract, or
rather as to the true meaning of this article of agreement, you
gentlemen would have nothing to do with the matter, as the
article being in writing, it would be the duty of the court to con-
strue it to say what it meant.   That is, when parties put their
agreement in writing and there is no allegation on the part of
either of the parties that there is any mistake, or that there is any-
thing left out or put in by mistake, or accident, or fraud, it would
be the duty of the court to construe it.   That, on the well recog-
nized principle, that a court, being learned in the law, is sup-
posed to be better able to construe the meaning and intention of
the parties.   [If there was nothing before you but the article
of agreement, we would direct a verdict in favor of the defend-
ant in this suit.   The clause which raises the question of dis-
pute, and which is the cause, or means, of this lawsuit is this :
" The said Frederick G. Schotte agreeing to assume all debts
due by said estate for which the said C. T. Schotte may be
now liable."   Standing alone, and the court construing the true
meaning of that, we would say that the only debts which Fred-
erick G. Schotte assumed were such debts of the estate for
which said C. T. Schotte was liable.   As a matter of law, at the

date of this article of agreement, on February 23, 1886, so far as the evidence in this case goes, Charles T. Schotte was not personally liable for any of them. They were the debts of his father, and the debt here in controversy, the mortgage, was a debt contracted by C. B. Schotte. There was no personal liability on any one of the three sons, or all of them, to pay that debt; that is, John Gilpin could not have proceeded personally against any one or all of the sons to have recovered any portion of this mortgage. His remedy was by proceedings on the mortgage and thereby to have obtained his mortgage debt by selling the land. If the land sold for sufficient to pay his debt, his debt would be paid him, but if not he would have no remedy over against the sons. So taking the article as it stands, there was no personal liability on C. T. Schotte to pay any of the debts of the estate of his father, and by the terms of this article F. G. Schotte assumed no liability to pay the mortgage.] [1] The plaintiff, however, in bringing this suit to recover the $2,000 mentioned in this article of agreement between Charles T. Schotte and Frederick G. Schotte, sets up that the article does not contain the whole of the contract or agreement between Charles T. Schotte and Frederick G. Schotte, and in order to support that allegation they called Mr. Rohrer, who drew the article, as a witness, and among other things he testified, as we take from the notes of the stenographer, as follows : " Q. Mr. Rohrer, will you state if Fred G. Schotte knew of the mortgage of John Gilpin? A. He did. Q. What was his agreement with Charles T. Schotte, what did he say about this mortgage when he signed the agreement? A. I don't remember whether it was at the time of the signing or whether in preliminary arrangement. Q. What did Frederick G. Schotte tell you to put in this article of agreement as to the incumbrances in the presence of Charles T. Schotte? A. I was instructed to embody in that contract the agreement of Fred G. Schotte to pay all the incumbrances on the estate of his father. Q. And by the use of the words in this article you thought you had done so? A. I thought so and believe so yet." That is, Mr. Rohrer testified that he thought at the time and still believes that he had expressed the agreement of the parties in that writing. The court, however, is not bound by his construction of the agreement, and we think that if it is true, as he testifies, that

he was told to put in the article what he says he was told to put in it, he did not use apt language to express it. One of the questions therefore for you to determine is, whether at the time this agreement was drawn up by Mr. Rohrer, he was instructed by F. G. Schotte, one of the parties to this agreement, and the grantee in the article, to embody in the agreement that he was to pay all of the incumbrances on the estate. If it is true that he was so instructed and that it is not in the agreement, (and we would say to you it is not,) and you find it was left out by the mistake of Mr. Rohrer, then we say to you that you can write that into the agreement and make it one of the terms of it. [In order that you may find as a fact that that was part of the agreement, to wit: "That Frederick G. Schotte was to pay all of the debts owing by his father," you must be satisfied of that by very much stronger evidence than you are when settling a controversy founded on oral testimony between two litigants. When two suitors have a controversy in court founded upon oral testimony, the jury should find for the one or for the other, in accordance with the preponderance of the evidence, but when one undertakes to change the terms of a written agreement, the party so undertaking must satisfy the jury by evidence that is clear, precise and indubitable; that is, very much stronger than the evidence required to settle a dispute between two suitors where the evidence is founded upon oral testimony.] [2] [They must do more than that. They must furnish you with the evidence of that fact by two witnesses, or by one witness, and other evidence, corroborative thereof which is equivalent to the additional witness. The only witness who was present at the time of the drawing of the contract was Mr. Rohrer, and if there was no other evidence than his, we would instruct you that you could not change the written agreement.] [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them.

*H. L. Golden*, with him *J. H. Painter*, for appellant.—Parol evidence if needed was simply to explain or identify the subject-matter, by reason of the ambiguity of the written agreement as to what debts F. G. Schotte assumed thereunder, or

perhaps to show the true consideration of the contract. Un-
der such circumstances the weight of the evidence determines
the question as has been decided in Graybill v. Penn. Twp.
Mut. Fire Ins. Assn., 170 Pa. 75, Lycoming Mut. Ins. Co. v.
Sailer, 67 Pa. 108, Aldrich & Co. v. Eshleman, 46 Pa. 420,
Watterson v. Allegheny Valley R. R. Co., 74 Pa. 208, Taylor
v. Preston, 79 Pa. 436, Buckley's App., 48 Pa. 491, and Lewis
v. Brewster, 57 Pa. 410.

*Ross Reynolds* and *M. F. Leason,* for appellee.—To reform
or contradict a written contract, the evidence of fraud or mistake
must be sufficient to move the conscience of a chancellor to
reform the instrument, that is, as to quantity there must be the
testimony of two witnesses or one witness with corroborating
circumstances equivalent to a second, and as to quality the evi-
dence must be clear, precise and indubitable: Rothschilds Co.
v. McLaughlin, 6 Pa. Superior Ct. 347 ; Thayer v. Seep, 168 Pa.
414 ; Keller v. B. & O. R. R. Co., 10 Pa. Superior Ct. 240 ; Van
Voorhis v. Rea Bros. & Co., 153 Pa. 19 ; Dickson v. Hartman
Mfg. Co., 179 Pa. 343 ; Honesdale Glass Co. v. Storms, 125
Pa. 268.

Opinion by Mr. Justice Mestrezat, January 7, 1901 :
On a former trial of this case, the plaintiff offered to prove
that F. G. Schotte agreed to pay the Gilpin mortgage, and that
the agreement was omitted from the written contract of Feb-
ruary 23, 1886, by mistake. The offer was rejected and by di-
rection of the court, a verdict was rendered for the defendant.
The plaintiff appealed to this court (192 Pa. 159), and the court
below was reversed, and we held that testimony was admissible
to prove that it was the intention of the parties that F. G.
Schotte, the vendee, should assume the payment of the mort-
gage, and that reference to the mortgage had been omitted in
the written agreement by mistake. On the present trial of the
cause the plaintiff offered testimony tending to show the alleged
omission or mistake in the written agreement between C. T.
Schotte and F. G. Schotte, and it was admitted. The court left
it to the jury to determine under the evidence whether the writ-
ten agreement contained the whole contract between the parties
or whether there had been omitted by mistake from the agree-

ment and which should have been inserted in it, a stipulation that F. G. Schotte was to pay the incumbrance on his father's estate.

The appellant contends on this appeal that the court below erred in the construction of the agreement, and that by its terms F. G. Schotte should have paid the Gilpin mortgage. The court however placed a different interpretation on the language of the agreement, but on the allegation of mistake in the scrivener who wrote it, permitted the plaintiff to introduce testimony to show that it was the intention of the parties that F. G. Schotte should pay the mortgage, and that it should have been so stipulated in the agreement. The appellant further alleges that the court erred in the quality and quantity of evidence required to justify the jury in finding that there was a mistake in the written agreement. These are the principal matters complained of in the assignments of error and all that require special consideration.

Standing alone, unaffected by parol testimony, the written agreement did not impose on F. G. Schotte the duty of paying the Gilpin mortgage. The language of the agreement did not warrant such an interpretation by the court. The court so held and then the plaintiff sought to correct the terms of the agreement by the introduction of evidence. Some excerpts taken from the charge and embraced in the assignments of error may not, in themselves and disconnected with other portions of the charge, be strictly accurate. But we must look at the whole charge in determining whether the court has committed any substantial error in submitting the case to the jury. The learned judge of the court below submitted to the jury for their determination, whether F. G. Schotte was to pay all the incumbrances on the estate of his deceased father, which included the Gilpin mortgage, and if so, whether this obligation was omitted from the agreement by mistake. In so doing, he was explicit in stating to the jury the character and quantity of evidence required to correct the alleged mistake in the agreement. In concluding his charge on this branch of the case the learned judge used this language: "The facts are for you, the law you will take from the court. Taking the testimony of Mr. Rohrer, of Mrs. G. A. Schotte and of Mrs. F. G. Schotte, is the evidence as a whole, considering all of it, of that clear, precise and indu-

bitable character as to enable you to write in this article of agreement, on the part of F. G. Schotte, that he would pay this mortgage. If you find the evidence is not of that character that would warrant you in so concluding, you will dismiss the case and find a verdict for the defendant. If you conclude that it should be written in, then you will proceed to determine a few other matters which perhaps will not be so difficult to find." There was clearly no error in thus submitting the case to the jury. We have so held in numerous cases. This was not an attempt by parol to explain a latent ambiguity but to reform a written agreement by showing a mistake by the scrivener in failing to insert therein the whole contract of the parties.

The case was fairly submitted and the jury have returned a verdict justified by the evidence.

The assignments of error are overruled and the judgment is affirmed.